NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-mj-14 |
| v. | GOVERNMENT'S MOTION FOR PRETRIAL DETENTION |
| SANTOS ALISAEL AGUILAR MAYA, MARCO ANTONIO MAGALLON, LUIS DELEON WOODWARD, and JORGE LUIS AMADOR, | |
| **Defendants.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain the defendants pending arraignment and trial.

The defendants, working for a Sinaloa, Mexico based Transnational Criminal Organization (TCO), have been charged in an amended criminal complaint with conspiring to distribute and possess with the intent to distribute approximately 1.4 metric tons of liquid heroin.

**Government's Motion for Pretrial Detention**            Page 1

Heroin is a poison, it is deadly, it is destructive, and it and other synthetic opioids are destroying lives, families, and communities. The liquid heroin was being transported in seven 55-gallon barrels which contained approximately 1,430 liters of a mixture and substance containing a detectable amount of heroin and weighing approximately 1.4 metric tons. Thirty milligrams of heroin is a potentially fatal dose and 1,430 liters of liquid heroin is enough to make millions of such doses. Based upon the nature of their crimes defendants are a clear and present danger to the community and a substantial risk of non-appearance at future court proceedings and should be detained.

**A.      Factual and Procedural Summary.**

Defendants are currently charged in an amended Criminal Complaint with engaging in a Conspiracy to Distribute and Possess with the Intent to Distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin and Possessing with the Intent to Distribute one (1) kilograms or more of a mixture and substance containing a detectable amount of heroin, all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846. The drug charges carry a mandatory minimum sentence of 10 years' imprisonment and a maximum term of life imprisonment. The amount of liquid heroin seized results in a Level 38 on the Sentencing Guidelines with an initial advisory guideline sentence of between 235 to 293 months' imprisonment.

The defendants were caught as part of a joint investigation conducted by the Westside Interagency Narcotics Task Force (WIN), Homeland Security Investigations (HSI), and the U.S. Attorney's Office. As part of that investigation, during the later part of January 2024, investigators learned that a Sinaloa, Mexico based Transnational Criminal Organization (TCO) was planning an extremely large shipment of what was purported to be liquid fentanyl and that

the shipment was destined to arrive, via a U-Haul truck, within the District of Oregon in the coming days. Late in the night of January 24, 2024, investigators located a U-Haul truck that was reported to be carrying the purported liquid fentanyl, and a companion vehicle that was traveling in tandem with the U-Haul truck, in the area of Bonneville, Oregon as the vehicles were traveling west towards Portland, Oregon. Through extensive surveillance throughout the late evening hours of January 24, 2024, and the very early morning hours of January 25, 2024, investigators were able to follow the two vehicles as the traveled together to a business parking lot in Beaverton, Oregon, where both vehicles stopped briefly and waited, shortly thereafter they left together and traveled to a Motel 6 in Tigard, Oregon, where the two vehicles parked and the defendants stopped for the night.

On the morning of January 25, 2024, after finding probable cause that the individuals associated with the vehicles were trafficking purported liquid fentanyl and that evidence of their criminal activity would be found within the two vehicles and their hotel room, U.S. Magistrate Stacie F. Beckerman authorized and the investigators then executed federal search warrants for the defendants' motel room and their two vehicles – a pickup truck and a U-Haul truck. Inside the U-Haul truck investigators found and seized eight 55-gallon barrels, seven of which were eventually determined to be full of a liquid containing heroin and weighing approximately 1.4 metric tons (1,430 liters weighing 1,430 kilograms).

///

///

///





///

///

**Government's Motion for Pretrial Detention** **Page 4**

Inside the defendant's motel room investigators found two loaded handguns.



Samples from the eight different barrels were field tested and the results came back presumptively positive for fentanyl and presumptively negative for heroin. The defendants were arrested and Judge Beckerman issued a criminal complaint finding there was probable cause that the four defendants were engaging in a conspiracy to distribute and possess with the intent to distribute 400 grams or more of a mixture and substance containing fentanyl.

On January 29, 2024, defendants made an appearance in federal court on the initial criminal complaint. Defendants Maya, Magallon, and Woodward were detained. Defendant Amador was released subject to pretrial supervision. Detention hearings have been scheduled on February 1, 2024, for defendant Woodward and on February 2, 2024, for defendant Magallon. Both defendants Magallon and Woodward also have preliminary hearings scheduled for February 2, 2024, as well.

The eight barrel samples where rushed to the Oregon State Crime lab for a comprehensive forensic analysis. A forensic scientist determined that the barrels did not contain the synthetic opioid fentanyl, but rather contained heroin, a different opioid and a Schedule I

**Government's Motion for Pretrial Detention**

controlled substance. The forensic scientist determined, after performing a color test and Gas Chromatography-Mass Spectrometry analysis, that samples taken from seven of the barrels (identified as samples 7, 8, 9, 10, 11, 12, and 13) contained heroin, a Schedule I controlled substance. No controlled substance was detected within the sample from the eighth barrel (sample 14). The barrels that were seized were almost completely full of liquid. The liquid volume of the seven 55-gallon barrels that were determined to contain a detectable amount of heroin is approximately 378 gallons, which is approximately 1,430 liters and weighs approximately 1,430 kilograms (1.4 metric tons).

On January 31, 2024, an amended criminal complaint was filed charging the defendants with engaging in a criminal conspiracy to distribute and possess with the intent to distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance and possession with the intent to distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, all in violation of all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846.[1]

---

[1] To prove a violation of Title 21, United States Code, Section 841(a)(1) the government is only required to prove the defendant manufactured, distributed, dispensed, or possessed with the intent to manufacture, distribute, or dispense **a** controlled substance, the government does not have to prove the defendant knew the identity of the controlled substance. *United States v. Collazo*, 984 F.3d 1308, 1320-21 (9th Cir. 2021) (emphasis added). It is the particular penalty provisions of Section 841(b) that require evidence of what controlled substance was involved in the offense. *Id.* To be convicted of a conspiracy or attempt to violate Title 21, United States Code, Section 841(a)(1) the "delivery, presence, or even existence of actual contraband" is not even required, merely the belief that a controlled substance was involved. *United States v. Macias-Valencia*, 510 F.3d 1012, 1016 (9th Cir. 2007) (defendant convicted of conspiracy with intent to distribute and attempted possession with intent to distribute methamphetamine where he agreed to purchase two pounds of methamphetamine from two DEA agents but "no methamphetamine was present during the investigation or arrest."); *United States v. Kottmyer*, 961 F.2d 569, 574 (6th Cir. 1992) (defendant convicted of attempt and conspiracy to possess

The defendants, recent residents of Yakima, Washington, were the drivers and passengers in the two vehicles.  Defendant Amador rented and drove the U-Haul.  Defendant Maya admitted to making the liquid heroin and possessing one of the handguns found in the motel room.  Defendants Maya, Magallon, and Woodward were born in Mexico and appear to be illegally in the United States.

The government asks the court to adopt Judge Beckerman's finding of probable cause that the defendants were engaged in a criminal conspiracy to distribute and possess with the intent to distribute a controlled substance.  We ask the court to find that, based upon the totality of the circumstances, the affiant's training and experience, and the updated results from the Oregon State Crime Lab that there is probable cause ("a fair probability") that the defendants were engaged in a criminal conspiracy to distribute and possess with the intent to distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and also possessed with the intent to distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846.[2]

---

cocaine with intent to distribute where he planned to buy what was two kilograms of "pure baking soda" from a government agent, thinking it was cocaine).

[2]      Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243–244, n. 13 (1983).  Phrased another way, the Ninth Circuit has defined probable cause as existing when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a **fair probability** that [the defendant] had committed a crime." *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986) (emphasis added).  To determine whether probable cause exists the court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996), and finding probable cause to arrest three

Based upon the nature of the charges and their history the government also seeks the continued detention of defendants Maya, Magallon, and Woodward as a danger to the community and a risk of nonappearance.

**B.      Applicable Law.**

    **1.      Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

---

individuals in a car where $763 was found in the glovebox and five small baggies of cocaine were found in back-seat armrest because a reasonable officer could conclude any or all three of the occupants exercised dominion and control over the cocaine). Because probable cause "deals with probabilities and depends on the totality of the circumstances," *Pringle*, 540 U.S., at 371, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232. "Probable cause, we have often told litigants, is not a high bar: It requires only the 'kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States,* 571 U.S. 320, 338 (2014). In making a probable cause determination the court shall give "due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers." *Ornelas,* 517 U.S. at 699, (1996). "In making this determination, a magistrate judge must assess the totality of the circumstances and make a 'practical, common-sense decision.'" *Gates, 462 U.S.* at 238. Under the totality of the circumstances test, otherwise innocent behavior may be indicative of criminality when viewed in context. *See United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991). Additionally, judges may rely on the training and experience of affiant police officers. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *United States v. Gil,* 58 F.3d 1414, 1418 (9th Cir. 1995). In making probable cause determinations the Court has found that car passengers "'will often be engaged in a common criminal enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing'" and that **drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him**." *Pringle*, 540 U.S. at 373 (*quoting Wyoming v. Houghton*, 526 U.S. 295, 304-5 (1999)) (emphasis added).

**Government's Motion for Pretrial Detention**                                                   **Page 8**

## 2. Rebuttable Presumption of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant**

> **will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id.* Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C.  Factors Supporting Detention.**

The defendants, working for a large Sinaloa, Mexico based Transnational Criminal Organization, are jointly responsible for conspiring to distribute and possess with the intent to distribute 1.4 metric tons of liquid heroin. Defendants Magallon, Maya, and Woodward were born in Mexico and illegally within the United States. All of the defendants are facing 10-year mandatory minimum sentences of imprisonment and maximum sentences of life imprisonment. The defendants should be detained pending trial as both a danger to the community and a risk of nonappearance.

**1.  Nature and Circumstances of the Offense.**

The trafficking of 1.4 metric tons of liquid heroin is truly an astronomical amount. To say the defendants are significant drug dealers is an understatement. Heroin is a poison and 30 mg. can be fatal – 1.4 metric tons of liquid heroin, 1,430 liters, can make millions of individual doses. Drug dealing is destructive to the community and heroin and other synthetic opioids are the leading cause of drug overdoses here in Oregon and across the United States. Drug dealers like the defendants are exactly the people Congress warned us about and why they created the presumption of detention in these cases. Drug dealers historically make their living from selling drugs and are prone to go back to it when they are released from custody. The high risk of pretrial recidivism and the resulting destruction it can cause warrants their continued pretrial detention. Additionally, these defendants are working for a Sinaloa, Mexico based Transnational Criminal Organization and they were armed during the commission of their crime. The defendants should be detained.

## 2. Weight of the Evidence.

The weight of the evidence against the defendants, as outlined in the criminal complaint, is extremely strong and supports their continued detention.

## 3. History and Characteristics of the Defendant.

The history and characteristics of the defendants also warrant their pretrial detention. Defendants are working for an extremely large and violent drug trafficking organization. Three of the defendants appear to be illegal aliens and any conviction will all but guarantee their eventual deportation. All the defendants are facing extremely long federal prison sentences which creates a huge incentive for the defendants to flee if released. Additionally, the group possessed two handguns during the commission of their crimes. They should be detained.

## 4. Nature and Seriousness of the Danger to the Community.

Heroin is deadly and it is destructive. The scale of the defendants' crime, the possession of 1.4 metric tons of liquid heroin for purposes of further distribution, is unparalleled here within the District of Oregon. The defendants drug dealing activities, by themselves, are extremely serious and present a clear and present danger to the community which warrants their continued pretrial detention. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendants pose to the community and the risk that they will continue dealing drugs even while on pretrial release. There is simply no condition or combination of conditions that the Court will impose that will mitigate the risk that the defendant will go back to distributing drugs within the community. The defendants should be detained.

///

///

## Conclusion

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendants pending their arraignment and trial and find they pose an unacceptable risk of non-appearance at future court hearings and they are a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendants as required.

- The defendants have not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendants' trafficking of significant amounts of heroin and the possession of firearms, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendants were released.

- Due to the weight of the evidence and the defendants' personal history and characteristics, including the potential penalties they are facing, no condition or combination of conditions will reasonably assure the appearance of the defendants at future court hearings as required if released from custody.

Based upon the above findings, defendants should be detained pending trial.

Dated: February 1, 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney